Robert R. BIDDULPH, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 06–308T.

United States Court of Federal Claims.

Dec. 20, 2006.

Robert R. Biddulph, Spanaway, Washington, pro se.

Robert Stoddart, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington D.C., for defendant.

## MEMORANDUM ORDER AND OPINION

HODGES, Judge.

This is a tax case. Plaintiff claims that the Government's assessment of taxes and penalties against him between 1998 and 2003 was unlawful. We conclude that this court lacks jurisdiction to consider plaintiff's case. Defendant's motion to dismiss must be granted.

### BACKGROUND[1]

Plaintiff Robert R. Biddulph and his wife Mandy L. Biddulph are taxpayers who reside in Washington State. Plaintiff and his spouse did not have any outstanding tax liabilities for the tax years of 1998 through 2000. Liabilities were paid through withholding credits, and neither filed a claim for refund during this period. The first taxable year for which an unpaid balance appeared was 2001.[2]

The IRS in November of 2004 assessed deficiencies against plaintiff for the tax years of 2001 and 2002. These were as follows: for 2001, a tax liability of $2,644.00, an estimated tax penalty of $104.63, a late filing penalty of $594.90, assessed interest of $445.68, and a failure to pay penalty of $409.82; for 2002, a tax liability of $5,141.00, an estimated tax

---

1. The following facts are derived from plaintiff's amended complaint, defendant's motion to dismiss, and any response or replies, as well as attachments thereto. "[T]he court may evaluate affidavits or other relevant evidence submitted by the parties whenever the truth of a jurisdictional fact is questioned" when entertaining a motion to dismiss pursuant to Rule 12(b)(1). *Estate of Akin v. United States*, 31 Fed.Cl. 89, 92 (1994). The majority of the background material comes from documents outside of the complaint, in particular, attachments to defendant's motion to dismiss. The plaintiff did not submit evidence of timely claims for tax refunds, or denials of any such claims.

2. This year also was the first that references to Mandy Biddulph did not appear on any tax account. The last year that plaintiff's tax documents included his spouse's name or social security number was 2000.

penalty of $171.80, a late filing penalty of $1,156.73, assessed interest of $468.86, and a failure to pay penalty of $488.39. Plaintiff did not file a claim for refund for tax year 2001, though he did for 2002. The IRS disallowed the refund request for 2002 on March 6, 2006.

The IRS issued levy notices for 2001 and 2002 on April 2, 2005. Thereafter plaintiff entered into an installment agreement with the IRS, through which the Service collected four payments of $92.75. Plaintiff requested a "collection due process equivalent hearing" on July 6, 2005.[3] This resulted in the reversal of the installment agreement and the release of plaintiff from the federal payment levy program on February 27, 2006. Plaintiff presently owes the IRS $3,828.03 for 2001 and $7,426.78 for 2002.

Plaintiff filed his federal income tax return for 2003 on October 28, 2004. He reported a tax liability of $11,216.00. The IRS assessed a late filing penalty of $739.40, interest of $124.85, and a failure to pay tax penalty of $131.45 on December 13, 2004. Plaintiff did not file a claim for refund for tax year 2003. The IRS issued a levy notice for 2003 on December 31, 2005. Discounting certain withholding credits, plaintiff presently owes the IRS $10,603.25 for the 2003 tax year.

Plaintiff captioned his initial filing with this court a "Verified Claim and Claim on Official Bond(s) of John Snow and Mark W. Everson" and named the United States and several government officials in their individual capacities as defendants. The court construed this as plaintiff's complaint and because it appeared to be a tax refund suit, instructed him to file an amended complaint showing only the United States of America as the defendant. The court also told plaintiff to include a proper allegation that he had requested a refund from the Internal Revenue Service and had been denied. Mr. Biddulph filed this amended complaint on May 30, 2006.

In his amended complaint, plaintiff alleges that the United States "engaged in tax collection activities resulting in the seizure and taking of [his] property." The tax years he is challenging are 1998 through 2003. Plaintiff did not submit proof of any refund requests he sought from the IRS for these tax years, or denials of such requests. He enumerates the issues before the court as follows:

1) Has the Secretary, personally or via his administrator, Commissioner of Internal Revenue personally or via any agent, executed, and provided Claimant a copy of, a 23C assessment certificate as required by law for each tax year for which there has been a taking of Claimant's property;

2) Does the administrative record evidence such a 23C assessment as to the tax years asserted in the collection activity; and,

3) If there is no 23C assessment certificate, may any collection activity by the Secretary, the Commission, or any agent or service (IRS) contracted or employed by the Secretary and/or Commissioner be lawful?

4) HOW MUCH *EXACTLY* DOES THE United States OWE CLAIMANT FOR THE UNLAWFUL TAKINGS OF PROPERTY BY RESPONDENT'S OFFICERS AND AGENTS?

The gist of plaintiff's argument is that the absence of a Form 23C assessment certificate makes unlawful the Government's tax collection activities against him from 1998 to 2003. He requests various avenues of relief, including: (1) a declaration that the tax collections during this period are unlawful, that any assessments against him are void, and that the Government has engaged in a "pattern and practice" of collection activities without due process; (2) an order enjoining tax collection against him for the period spanning 1998 to 2003, directing the return to him of all funds collected during this period, directing that defendant pay him interest on collections that occurred during this period, joining as defendants in this action those individuals who took part in the collections

---

3. Due process protections are afforded by statute. Section 6330 of the Internal Revenue Code provides taxpayers with notice and a fair hearing before the IRS may levy on their property. 26 U.S.C. § 6330.

against plaintiff, declaring that these individuals acted outside the scope of their authority, and requiring that the Government establish a training program to prevent its employees from engaging in tax collections without the Form 23C assessment; and (3) punitive damages against each party, including those he claims the court should hold individually liable.

The Government has moved to dismiss plaintiff's case for lack of jurisdiction. It maintains that this court lacks jurisdiction for two primary reasons: first, the plaintiff never paid his taxes in full for any of the years in dispute; and second, the plaintiff did not exhaust his administrative remedies, a prerequisite to filing this tax case.

### DISCUSSION

This court does not hold *pro se* litigants to the same exacting standards as formal pleadings drafted by lawyers. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Pro se status does not immunize a plaintiff from meeting jurisdictional requirements, however. *See Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[L]eniency with respect to mere formalities should be extended to a *pro se* party.... However, ... a court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only.").

The burden is on the plaintiff in cases such as this where the Government has raised the issue of subject matter jurisdiction through a Rule 12(b)(1) motion to dismiss. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). A plaintiff needs only to set forth a *prima facie* showing of jurisdictional facts to survive a motion to dismiss. *Raymark Indus., Inc. v. United States,* 15 Cl.Ct. 334, 338 (1988). This court considers the facts alleged in the complaint to be correct. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). We will deny the motion unless "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Frymire v. United States,* 51 Fed.Cl. 450, 454 (2002) (quoting *Davis v.*

*Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

Jurisdiction in the United States Court of Federal Claims arises from the Tucker Act. *See* 28 U.S.C. § 1491. The Tucker Act authorizes the court to

render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*Id.* § 1491(a)(1).

This court may exercise jurisdiction over tax refund suits. *See* 28 U.S.C. §§ 1346(a)(1), 1491(a)(1). A plaintiff, however, must meet certain prerequisites to invoke Tucker Act jurisdiction over a tax refund claim. For example, jurisdiction is dependent upon plaintiff's first seeking a refund from the IRS:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

■ 26 U.S.C. § 7422(a). Mr. Biddulph has not provided the court with any evidence that he timely filed claims for refund with the IRS for any of the years in dispute except for 2002. Because such claims are a condition precedent to filing suit in this court, we lack jurisdiction over all matters plaintiff raised in his amended complaint except for those related to the 2002 tax year. *See, e.g., Harris v. United States,* 33 Fed.Cl. 470, 472 (1995), *aff'd,* 106 F.3d 426 (Fed.Cir.1997) (table).

■ The court may not entertain plaintiff's claims pertaining to the 2002 tax year, however, because plaintiff did not pay in full the amounts assessed against him for that

year. "[P]ayment of the assessed taxes in full is a prerequisite to bringing a refund claim." *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002) (citing *Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960)). Plaintiff has not paid his taxes in full or any interest or penalties for any of the years in dispute including 2002.[4] We agree with defendant that the court lacks subject matter jurisdiction over plaintiff's claims relating to all tax years in contention.

Plaintiff's amended complaint contains allegations that sound much like constitutional takings claims. He seeks relief from the court for the allegedly "unlawful takings of property" by the Government. Plaintiff's use of the term "unlawful takings" demonstrates a misunderstanding of this court's jurisdiction. "[A]n uncompensated taking and an unlawful government action constitute 'two separate wrongs [that] give rise to two separate causes of action[.]'" *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed.Cir.2001) (quoting *Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed.Cir.1998)). Tucker Act jurisdiction over a constitutional taking presumes the validity of the government action. *See, e.g., Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed.Cir.2006). Plaintiff cannot simultaneously argue that the tax assessments by the IRS were not authorized and maintain a proper Fifth Amendment "takings" claim. In any event, the imposition of a tax does not constitute "the taking of property for public use, in the sense of the Constitution." *Branch v. United States*, 69 F.3d 1571, 1577 (Fed.Cir.1995) (quoting *County of Mobile v. Kimball*, 102 U.S. 691, 703, 26 L.Ed. 238 (1880)). The court lacks jurisdiction to hear such allegations.

If plaintiff has attempted to allege a breach of contract with the United States, he has not alleged facts to support the elements of an express or implied government contract. *See Lewis v. United States*, 70 F.3d 597, 600 (Fed.Cir.1995) (establishing a valid

contract with the Government requires that plaintiff show mutuality of intent to contract, offer and acceptance, consideration, and actual authority by a representative of the Government to bind it in contract); *see also Rinaldi v. United States*, 30 Fed.Cl. 164, 167–68 (1993) (implied contract jurisdiction in this court does not include claims for allegedly wrongful taxation). This court therefore is without jurisdiction over plaintiff's breach of contract claims.

Generally, the court's jurisdiction does not extend to equitable matters or claims for injunctive relief. *See, e.g., Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997). Our jurisdiction is limited to "actual, presently due money damages from the United States." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Plaintiff's various requests, including that the court declare that defendant acted beyond the scope of its authority, that the Government engaged in a "pattern and practice" of unlawful collections, and that any assessments against him are void, are without merit.

## CONCLUSION

Plaintiff cannot escape the jurisdictional defects in his case by arguing that he is not a taxpayer, or that "this is not a tax case." Plaintiff has not offered any legitimate basis for jurisdiction in this court however the court construes his claims. Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk of Court will dismiss plaintiff's complaint without prejudice. No costs.

---

4. The Government did collect four payments pursuant to the installment agreement, which the Government applied toward his 2001 tax liability. Plaintiff's installment payments totaled only $371.00, where his assessed liabilities were

$2,644.00. The *Flora* Full Payment Rule requires that tax assessments be paid in their entirety prior to commencing an action in this court for a refund. *Flora,* 362 U.S. at 177, 80 S.Ct. 630.